# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERRY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:18-cv-01307-AKK** |
| | ) | |
| **TOWN OF MORRIS, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Terry Williams filed this action against his former employer, the Town of Morris, Alabama, alleging that the Town violated his procedural due process rights by terminating his employment without notice or a hearing. Doc. 1-1. This action is before the court on the parties' cross-motions for summary judgement. Docs. 21 and 26. According to Williams, the Town did not give him adequate notice of the reasons for his termination, or an opportunity to be heard before it terminated him, in violation of the due process clause of the United States and Alabama Constitutions, and Alabama Code § 11-43-230. Docs. 1-1 and 23. Consequently, Williams seeks lost wages and benefits, mental anguish damages, and an order declaring his termination void and reinstating him as a police officer for the Town. *Id.* Although the Town admits that it did not give Williams written notice, or a formal hearing prior to his discharge, the Town contends that Williams had oral

notice of the reasons for his termination and that Williams' pre-termination meeting with the Chief of Police satisfies the requirements of due process. Doc. 26. For the reasons explained below, Williams' motion for summary judgment is due to be denied, and the Town's motion is due to be granted solely as to Williams' claims for monetary damages for violations of § 11-43-230.

## I.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis of the motion and proving the absence of a genuine dispute of material fact. *Id.* at 323. If the moving party meets that burden, the burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). "[T]he presence of cross motions does not affect [the court's] standard of review." *Oviedo Town Center II, L.L.L.P v. City of Oviedo, Florida*, 2018 WL 6822693, at * 3 (11th Cir. Dec. 28, 2018) (citing *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018)).

## II.    FACTUAL BACKGROUND

Williams worked as a police officer on a full-time basis for the Town of Morris from May 5, 2014 until February 15, 2018, docs. 22-2 at 1; 25-11, and had attained non-probationary status as an employee before his discharge, docs. 22-1 at 40-41; 22-2 at 1; 22-3 at 11. This lawsuit stems from the Town's decision to discharge Williams after his arrest on misdemeanor charges of contributing to the delinquency of a minor. *See* docs. 1-1; 25-8 at 33; 25-9 at 1.

Jefferson County, Alabama issued a warrant for Williams' arrest on February 9, 2018 based on allegations that, among other things, Williams bought cigarettes for a minor on two occasions. Docs. 25-8 at 33; 25-9 at 1-2. When Williams learned of the warrant that day, he texted the Town's Chief of Police, Mike Nazarchyk, stating, "Call me, important." Docs. 25-1 at 38; 25-4; 25-10 at 1. Thereafter, Williams informed Chief Nazarchyk about the arrest warrant and "what was going on." Doc. 25-1 at 38. *See also* docs. 22-1 at 18; 25-10 at 1. The Chief responded by telling Williams that he would inform the mayor about the situation, and that "[w]e'll probably put you on admin leave without pay." Docs. 25-1 at 38;

22-1 at 19, 46.   The Chief also advised Williams to turn himself in, which Williams did two days later.  Docs. 22-1 at 19, 46; 25-1 at 38-39; 25-10 at 2; 25-12.

After his release on bond, Williams met with Chief Nazarchyk to discuss the charges against him.  Docs. 22-1 at 18; 25-1 at 38-39; 25-10 at 2.  During that meeting, the Chief gave Williams a letter stating, "Effective as of this date you are hereby placed on administrative leave without pay until further notice."  Docs. 22-2 at 1; 22-4; 25-1 at 39; 25-10 at 2.  When the Chief told Williams that, in light of the arrest and the accusations against Williams, the Mayor would accept Williams' resignation, Williams stated that he would not resign because he had not done anything wrong.   Docs. 25-1 at 38; 25-10 at 2.   Chief Nazarchyk informed Williams that Mayor Joe Pylant and the Town Council would decide any further disciplinary actions to take against Williams, but the Chief does not remember telling Williams that he could present his side of the story to the Council.  *See* doc. 22-1 at 27.

The Town Council called a special meeting on February 14, 2018 to discuss what actions to take against Williams in light of his arrest.  Docs. 22-1 at 28; 22-3 at 15; 25-1 at 40; 25-14 at 1.  The Town posted notices of the meeting at a gas station in Morris, at the post office, and on a bulletin board at town hall, which stated:

> This is to advise that there will be a Special Called Meeting of the Morris Town Council on Wednesday, February 14, 2018 at 6:00 p.m. at the Morris Town Hall to make decisions concerning the Morris Police Department and the Morris Volunteer Fire Department and to consider a Proclamation to recognize the period of February 23-25, 2018 as National Girl Scout Cookie Weekend.
>
> Anyone who wishes to attend is invited to do so.

Doc. 25-14 at 6. *See also* docs. 22-1 at 28; 22-3 at 15. Williams did not see the notices, and, consequently, neither he nor a representative attended the meeting. Docs. 25-1 at 40; 22-1 at 29; 22-3 at 24.

During the meeting, the Council went into executive session with the Mayor, the Chief, and the Town's attorney, Teresa Watson, to discuss Williams' employment, and the Council "voted unanimously to terminate Williams' employment, effective immediately." Docs. 22-1 at 45-46; 22-3 at 16; 25-10 at 3; 25-14 at 2. According to Chief Nazarchyk, the Town felt it needed to act quickly in response to Williams' arrest and the accusations leading to his arrest so that the community would not "lose their trust in the police department." Doc. 25-10 at 3.

Williams did not learn about the meeting until the next day when he met with Chief Nazarchyk. Doc. 25-1 at 40. *See also* doc. 25-10 at 3. At that meeting, the Chief gave Williams a letter dated February 15, 2018, stating, "[t]he Governing body of the Town of Morris has decided that as of this date your services a Police Officer for the Town of Morris are no longer required." Docs. 22-2 at 2; 22-5; 25-10 at 3. The Chief signed the letter, and asked Williams to sign it. Docs. 22-2 at 2;

22-5; 25-1 at 38, 40. Williams refused, however, because he did not believe he had done anything wrong. *See* doc. 25-1 at 38, 40. *See also* doc. 25-10 at 3. Williams "figured" that his termination was based on his arrest, but the Town did not give him any written reason for the termination. Docs. 25-1 at 41. After receiving the letter, Williams asked the Chief how long he had to appeal his termination, and the Chief replied that Williams had fourteen or fifteen days. Docs. 22-1 at 20; 25-1 at 41; 25-10 at 3.

Subsequently, Williams sent a text message to Chief Nazarchyk, asking him, "[c]an I get a copy of the page or pages used to terminate me?" Docs. 22-1 at 19; 25-1 at 41. In response, the Chief stated that Williams "would have to contact [the] city attorney in regards to that . . . ." Docs. 22-1 at 19; 22-6. *See also* docs. 22-2 at 2; 25-10 at 3. According to Williams, he also asked the Chief about his rights regarding an appeal and hearing, but the Chief did not provide him with that information. Doc. 22-2 at 2. After communicating with the Chief, Williams called Watkins, the Town's attorney, to ask for a copy of the Town's personnel rules and for information about his rights to a hearing and to appeal. Docs. 22-2 at 2; 25-1 at 41. Watkins declined to provide the requested information, stating that she did not have to talk with Williams and would talk with his attorney instead. Docs. 25-1 at 41, 45-46; 22-2 at 2. On February 26, 2018, Williams sent a letter to Mayor Pylant stating:

> I Terry Williams give notice to appeal my termination of employment from the Town of Morris.
>
> On 2/20/2018 a Notice of Court Action was granted for an Order Granting Motion to Dismiss signed by Judge Katrina Ross.[1]

Docs. 22-2 at 2; 22-3 at 13; 22-7. Neither the Town nor Mayor Pylant responded to Williams' letter, or contacted Williams about his appeal. Docs. 22-2 at 2; 22-3 at 14; 25-1 at 42. This action followed.

## III.  ANALYSIS

Williams asserts three claims against the Town:  (1) Count One—violations of Alabama Code § 11-43-230, and Article 1, § 13 of the Constitution of Alabama of 1901 ("Article I, § 13"), (2) Count Two—violations of his federal due process rights, and (3) Count Three—a claim for declaratory and injunctive relief, seeking an order declaring his termination void and reinstating him as a police officer. Doc. 1-1. The court addresses Williams' claims in turn.

### A.  <u>Count One—Due Process Claim Under Alabama Law</u>

In Count One of his Complaint, Williams asserts a claim against the Town for violating his due process rights under Article I, § 13 and Alabama Code § 11-30-230. Doc. 1-1 at 4. The Alabama Constitution provides that "every person, for any injury done him . . . shall have a remedy by due process of law . . . ." Ala.

---

[1] The State moved to drop the criminal charges because they should have been prosecuted in Family Court, rather than in District Court, and the court granted the motion. Doc. 25-9 at 3-4. Chief Nazarchyk did not inform the Council or the Mayor that the State dropped the charges. *See* docs. 22-1 at 29; 22-3 at 16-17.

Const. Art I, § 13. And, Alabama Code § 11-43-230 requires that "[e]very municipality shall provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers," and establishes standards regarding such hearings. Ala. Code 1975 § 11-43-230. According to Williams, he is entitled to summary judgment on Count One because undisputed evidence establishes that the Town violated his due process rights by not following the requirements of § 11-43-230. Doc. 23 at 6-9. On the other hand, the Town argues that it is due judgment because neither Article I, § 13, nor Alabama Code § 11-43-230 provides a private right of action for money damages. Doc. 26 at 10-11.

1. <u>Whether Alabama law provides for a private right of action</u>

"'The dismissal of a public employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under Alabama law.'" *Hardric v. City of Stevenson*, 843 So. 2d 206, 210 (Ala. Civ. App. 2002) (quoting *City of Gadsden v. Harbi*n, 398 So. 2d 707, 708 (Ala. Civ. App. 1981)) (alteration in original omitted). Thus, Williams can assert a tort claim against the Town for discharging him without a hearing as required by § 11-43-230. *See id.* (recognizing that a police investigator who is terminated without a hearing may assert a valid claim of wrongful termination).[2] But, to recover

---

[2] The Town is correct that Count One is not a "wrongful termination" claim because Williams only challenges the process the Town afforded him, and not the Town's reason for the

monetary damages against the Town for violations of § 11-43-230, Williams "must show clear and convincing evidence of legislative intent to impose civil liability for a violation of the statute." *American Auto Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001). Williams does not point to any provision of § 11-43-230 that evidences an intent to create a private right of action for money damages, and the court finds nothing within the statute that implies such an intent. *See* Ala. Code § 11-43-230. In addition, Alabama law does not recognize "a private cause of action for monetary damages based on the provisions of the Constitution of Alabama of 1901 . . . ." *Matthews v. Ala. Agricultural and Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000) (citation omitted). Accordingly, the Town is entitled to summary judgment on Count One to the extent that Williams seeks monetary damages, such as damages for alleged mental anguish. This does not end the inquiry, however, because Williams also seeks equitable relief in the form of back pay, or lost wages for violations of § 11-42-230. *See* doc. 1-1 at 3, 5.

2.    Whether Williams is entitled to summary judgment as to liability for violations of § 11-43-230

As noted above, § 11-43-230 mandates that a municipality "shall provide a predisciplinary hearing prior to the suspension or termination of its law

---

termination. *See* doc. 33 at 5. This fact, however, has no bearing on whether Alabama law recognizes a tort claim for termination without a hearing in violation of § 11-43-230.

enforcement officers." Ala Code. § 11-43-230(a).[3]  Williams argues that he is entitled to summary judgment as to liability on Count One because undisputed evidence shows that the Town failed to provide the required notice and hearing. Doc. 23 at 6-9.  Indeed, the Town concedes that Williams did not receive the written notice required by § 11-43-230.  *See* docs. 22-3 at 24; 26 at 12.  *See also* doc. 22-2 at 1.  In addition, at the time of Williams' termination, the Town did not have written due process procedures regarding predisciplinary hearings.  *See* doc. 22-1 at 24.  Next, while the Town correctly notes that Williams met with Chief Nazarchyk prior to his termination, it is undisputed that Williams did not have a formal hearing before the Town Council, i.e., the body that had authority to terminate his employment.  *See* docs. 22-1 at 18, 29; 25-1 at 38-40.  Based on that evidence, Williams has established that the Town violated § 11-43-230.

---

[3] The statute further provides as follows:

[] Every municipality shall establish written due process procedures applicable to the predisciplinary hearing.  At a minimum, this due process shall consist of written notice to the officer of the reasons for the termination or suspension.  This notice shall be issued by the person or persons with authority to suspend or terminate the law enforcement officer.  The notice shall inform the officer that he or she has 10 days to request, in writing a hearing before the person or persons with authority to suspend or terminate.  . . .

[] The hearing shall be conducted by an impartial officer or body with authority to suspend or terminate the law enforcement officer.  . . .

[]  The officer has a right to appear at this hearing in person or by representative and to address the charges against him or her.  Ala. Code § 11-43-230 (a)-(d).

This finding does not render a ruling for Williams automatically. To the contrary, Williams has not cited any authority to support the proposition that Alabama recognizes a tort claim based solely on violations of the requirements of § 11-43-230, and the court has found no such authority. Rather, Alabama law recognizes a tort claim based generally on a municipality's termination of a public employee who is entitled to a pre-termination hearing without such a hearing. *Hardric*, 843 So. 2d at 210; *Harbin* 398 So. 2d at 708. In this case, even though the Town violated the requirements of § 11-43-230, Williams did meet with Chief Nazarchyk to discuss his arrest before his termination. Docs. 22-1 at 18; 25-1 at 38-39; 25-10 at 2. In addition, the Town held a pre-termination hearing at a special meeting of the Town Council, which had authority to terminate Williams, and it posted public notice of the meeting. Docs. 22-1 at 28; 22-3 at 15; 25-14 at 6. Williams does not present arguments regarding why his meeting with the Chief or the Town Council's hearing at the special meeting cannot qualify as a pre-termination hearing as a matter of law. *See* doc. 23. As a result, Williams has not shown that no genuine issues of material fact exist regarding whether he had a pre-termination hearing as required by Alabama law, and he is not entitled to summary judgment on Count One.

**B.     Count Two—Federal Due Process Claim Under § 1983**

In Count Two, Williams asserts a federal due process claim under 42 U.S.C. § 1983 for alleged violations of his procedural due process rights under the Fourteenth Amendment.  Doc. 1-1 at 4.  To prevail on that claim Williams must establish "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'"  *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  The first two requirements are not in dispute at this juncture, as the Town does not argue that Williams failed to produce evidence of state action, or that he had a constitutionally-protected property interest in continued employment as an officer.  *See* doc. 26; *see also* doc. 22-1 at 40-41; 22-3 at 11 (acknowledging that Williams had permanent status as a Town employee); *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (noting that an employee with tenure, or permanent status, "had a property right in continued employment and therefore was entitled to the protection of procedural due process") (citation and emphasis in original omitted).  Thus, the only issue of contention is whether the Town provided Williams with adequate process prior to his termination.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the

nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 and 546 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  In light of that principle, "the Supreme Court has explained that a 'tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' before a state or state agency may terminate an employee.  []  In other words, the employee is entitled to 'some kind' of pre-termination hearing." *McKinney*, 20 F.3d at 1561 (quoting *Loudermill*, 470 U.S. at 542 and 546).  This pre-termination hearing may be "very limited" if a "comprehensive post-termination hearing" follows it.  *Gilbert v. Homar*, 520 U.S. 924, 929 (1997).  *See also Loudermill*, 470 U.S. at 546 ("Our holding rests in part on the provision in Ohio law for a full post-termination hearing.").

### 1.    Whether the Town gave Williams adequate notice

Williams contends that the Town did not give him sufficient notice prior to his discharge.  Doc. 23 at 9-11.  For its part, the Town admits that it did not provide Williams with written notice of the reasons for his termination, but argues it gave Williams adequate oral notice.  Doc. 26 at 11-12.  Indeed, Williams admits that Chief Nazarchyk told him that the Town would probably place him on administrative leave based on his arrest, that he knew the reasons for his placement on leave, and that he discussed the problem giving rise to his termination with the

Chief before his discharge. Doc. 25-1 at 38. Because written notice of the reasons for an employee's dismissal is not required to satisfy due process, *see Loudermill*, 470 U.S. at 542, Williams' admissions that he had oral notice of the reasons the Town relied on to place him on administrative leave and to terminate his employment establish that the notice he received satisfies procedural due process requirements.

2. <u>Whether Williams received an adequate hearing</u>

Williams contends, alternatively, that even if he received adequate notice, the Town violated his right to procedural due process by failing to afford him a hearing before his termination. *See* doc. 23 at 11. However, in his motion for summary judgment, Williams fails to address his pre-termination meeting with Chief Nazarchyk, or whether that meeting may have been sufficient to provide him with "an opportunity to present his side of the story" prior to his termination. *See* docs. 21 and 23. *See also Loudermill*, 470 U.S. at 546 (citations omitted).[4] As a result, Williams has not shown the absence of a material fact on whether the Town provided him with an adequate pre-termination hearing, and Williams is not entitled to summary judgment on his federal due process claim.

---

[4] In his reply brief, Williams argues that the meeting with Chief Nazarchyk cannot qualify as a hearing for purposes of procedural due process. Doc. 31 at 5-6. But, "arguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (alteration and quotation omitted).

For its part, the Town argues that Williams' pre-termination meeting with Chief Nazarchyk satisfies the requirements of due process, and relies on two Fifth Circuit cases to support its argument. Doc. 26 at 13. In *Caine v. Hardy*, 943 F.2d 1406 (5th Cir. 1991) (en banc), the Fifth Circuit found that although a public employee is entitled to "'some kind of hearing' before termination, this may consist of not more than a meeting at which the employer state the grounds for dismissal and gives the employee an opportunity for rebuttal." *Id.* at 1412 (citing *Loudermill*, 470 U.S. at 546). But, the Fifth Circuit qualified that statement by further finding, "[t]he brief pre-termination hearing is satisfactory so long as it is coupled with more formal post-termination proceedings . . . ." *Id.* In keeping with that finding, in *Browning v. City of Odessa, Texas*, 990 F.2d 842 (5th Cir. 1993), the Fifth Circuit found that a plaintiff's thirty-minute pre-termination meeting with his supervisor was sufficient to satisfy due process when "a full evidentiary post-termination hearing was available." *Id.* at 844-45. *Caine* and *Browning* are distinguishable from this case because, here, the Town did not afford Williams any post-termination proceedings, much less formal proceedings. In fact, the Town did not respond to Williams' letter appealing his termination. *See* docs. 22-3 at 13-14; 22-2 at 2. As a result, the Town has not shown that Williams' pre-termination meeting with Chief Nazarchyk was sufficient to satisfy Williams' right to

procedural due process as a matter of law, and a question of fact exists on this issue.

In addition, although the Town Council called a special meeting to discuss Williams' continued employment, the Town does not dispute that Williams did not attend the meeting, or that no one attended the meeting on Williams' behalf. *See* docs. 25-1 at 40; 22-1 at 29; 22-3 at 24. Moreover, the Town did not refute Williams' testimony that he did not know about the meeting, *see* doc. 25-1 at 40, or present any argument or authority to support the proposition that posting public notice of a Town Council meeting is sufficient to give Williams a meaningful opportunity to be heard prior to his termination. *See* docs. 26, 27, 33.

3. <u>Whether Williams' due process claim fails based on his failure to pursue state remedies</u>

Perhaps in recognition of the issues regarding whether Williams received an adequate opportunity to be heard prior to his termination, the Town argues that Williams' due process claim must be dismissed because he failed to take advantage of state remedies, such as seeking a writ of certiorari in state court, prior to filing his claim. Doc. 26 at 14-17. The Town relies primarily on *McKinney v. Pate* to support this argument. In *McKinney*, the plaintiff asserted a procedural due process claim against his former employer based on allegations that he was not afforded a fair pre-termination hearing because the board that held the hearing and made the termination decision was biased. 20 F.3d at 1560-61. The Eleventh

Circuit held "even if [the plaintiff] suffered a procedural deprivation at the hands of a biased Board at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the State [] refuses to make available a means to remedy the deprivation." *Id.* at 1563.

However, *McKinney* is distinguishable from this case because, unlike Williams, the plaintiff in *McKinney* received a formal hearing before his termination. *See id.* at 1555 (noting that the board held a three-day hearing prior to the plaintiff's termination and that the plaintiff and his counsel participated in the hearing). Thus, Williams' due process claim, which is premised on the Town's failure to provide him with an adequate pre-termination hearing, is not barred by *McKinney*. *See Galbreath v. Hale Cty., Alabama Comm.*, 754 F. App'x 820, 828 (11th Cir. 2018) ("[W]here a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application."). As a result, because there is a question of fact regarding whether the Town afforded Williams with an adequate pre-termination hearing, the Town is not entitled to summary judgment on Williams' due process claim simply because he failed to seek a writ of certiorari in state court prior to filing suit. *See Enterprise Fire Fighters' Ass'n v. Watson*, 869 F.Supp. 1532, 1541 (M.D. Ala. 1994) ("[W]hen the violation of due process is the failure to provide a pretermination hearing, the violation cannot be cured subsequent to termination.").

## C.    Count Three—Williams' Declaratory and Injunctive Relief Claim

Finally, in Count Three, Williams asserts a claim for declaratory and injunctive relief, seeking an order reinstating him as a police officer and declaring his termination void and "removed and expunged from his employment record." Doc. 1-1 at 4. Williams argues that he is entitled to summary judgment on the claim because the Town violated his due process rights. Docs. 23 at 11-12; 31 at 9. However, as discussed above, a question of fact exists regarding whether the Town violated Williams' federal and state due process rights. In addition, Williams did not cite any authority that supports his argument that a violation of § 11-43-230 entitles him to reinstatement or an order declaring his termination void. *See* doc. 23.[5] As a result, Williams has not shown he is entitled to summary judgment on Count Three.

The Town argues that it is due judgment on Count Three because even if Williams proves a violation of his due process rights, it does not follow that he is entitled to reinstatement or to have his termination declared void and expunged from his employment record. Doc. 26 at 17-19. The Town contends it discharged

_____

[5] Williams cites *Finley v. Town of Camp Hill*, 2015 WL 2031371 (M.D. Ala. April 30, 2015) in his reply brief to support his argument that the Town's violations of § 11-43-230 entitle him to reinstatement. Doc. 31 at 6-7. Again, arguments raised for the first time in reply are not properly before the court. *See Herring*, 397 F.3d at 1342. In addition, in *Town of Camp Hill*, the court held that the plaintiffs stated plausible wrongful termination claims, and found that the plaintiffs may be entitled to equitable relief in the form of reinstatement and back pay if they ultimately succeed on the claims. 2015 WL 2031371, at *2. The court did not suggest that proving a violation of § 11-43-230 would entitle the plaintiffs to reinstatement or back pay as a matter of law. *See id.*

Williams based on his arrest for contributing to the delinquency of a minor because the Town believed that, in light of the circumstances of Williams' arrest, the discharge was necessary to maintain the community's trust in its police department. *See* doc. 25-10 at 2-3. Williams does not challenge the Town's stated motives, and only attacks the failure to provide him with adequate process before his discharge. *See* docs. 1-1; 23. Indeed, Williams admits that it is necessary for a community to trust that a police officer acts for their benefit, and that it is difficult for an officer to police a community that does not trust the officer. Doc. 25-1 at 28. But, even though the Town had legitimate and proper substantive reasons to discharge Williams, the Town still must afford him adequate due process before doing so. *See Loudermill*, 470 U.S. at 546; *Watson*, 869 F. Supp. at 1541 ("[T]he violation of due process is complete even if it later appears certain that the termination was substantively correct."). And while the Town may well decide to still discharge Williams even after affording him the process he is due under the Alabama and United States Constitutions, that does not mean he cannot seek to void the current discharge. Therefore, because courts in this circuit have indicated that reinstatement is an available remedy for a plaintiff who proves that a defendant violated his procedural due process rights by discharging him without a

pre-termination hearing,[6] the court finds that, at this juncture, the Town has not established that it is entitled to judgment on Count Three.[7]

## IV. CONCLUSION AND ORDER

For the reasons explained above, Williams' motion for summary judgment, doc. 21, is **DENIED**. The Town's motion for summary judgment, doc. 26, is **GRANTED** as to Williams' claims for monetary damages for the Town's alleged violations of Alabama Code § 11-43-230 and Article I, § 13 of the Alabama Constitution, and these claims are **DISMISSED WITH PREJUDICE**. The balance of the Town's motion for summary judgment is **DENIED**.

This matter will proceed to a jury trial on Williams' remaining claims on **July 8, 2019**. The final pre-trial conference is **SET** for **May 16, 2019** at **1:30 p.m.** The court directs the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as **Exhibit A**.

---

[6] *See McKinney*, 20 F.3d at 1560 (noting that the appropriate remedies for a procedural due process claim "include reinstatement and the correction of any procedural defects in the means by which [the plaintiff] was terminated"); *Watson*, 869 F. Supp. at 1541 n.8 (noting that a plaintiff who prevailed on his procedural due process claim could have sought reinstatement) (citing *McKinney*, 20 F.3d at 1560); *Town of Camp Hill*, 2015 WL 2031372, at *2 ("If the plaintiffs are successful on their wrongful termination claims [based on their termination without a hearing as required by § 11-43-230], equitable relief in the form of reinstatement and back pay until they receive adequate due process would be available to them.") (citation omitted).

[7] *Danley v. Alabama State Univ.*, 212 So. 3d 112 (Ala. 2016), the case the Town relies upon to argue that Williams cannot be reinstated even if he prevails on his procedural due process claims is distinguishable because the plaintiff in *Danley* had a three-day pre-termination hearing prior to his discharge. *Id.* at 117-118. Additionally, although the Court in *Danley* affirmed the trial court's judgement refusing to order the plaintiff reinstated, the Court did not hold that reinstatement is never an available remedy for violations of a plaintiff's procedural due process rights. *See id.* at 140-41.

**DONE** the 9th day of May, 2019.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE

## EXHIBIT A

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA

### PRE-TRIAL DOCKET
### HON. ABDUL K. KALLON, PRESIDING

## BIRMINGHAM, ALABAMA

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in chambers in the Hugo Black Federal Courthouse in Birmingham, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order in Word or WordPerfect format, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon) to illustrate the format preferred by the court and also to provide additional guidance and

instructions.  Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike.  The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute.  This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing.  Pretrial orders should be simple, short, and informative.


IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH</u> PREJUDICE.